Jonathan G. Brinson (#025045)
E. Tanner Warnick (#029100)
POLSINELLI, PC
CityScape
One East Washington Street, Suite 1200
Phoenix, AZ 85004-2568
Phone: (602) 650-2000
Fax: (602) 264-7033
jbrinson@polsinelli.com
twarnick@polsinelli.com

Attorneys for Plaintiffs Moon Valley Nursery, Inc.
and Glen Flora Farm Holdings, LLC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Moon Valley Nursery, Inc., and Glen Flora Farm Holdings, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>Zurich American Insurance Company,<br><br>    Defendant. | Case No.<br><br>**COMPLAINT** |

Plaintiffs Moon Valley Nursery, Inc. and Glen Flora Farm Holdings, LLC (collectively "Moon Valley") allege the following claims for breach of contract and breach of the duty of good faith and fair dealing against Defendant Zurich American Insurance Company ("Zurich"):

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Moon Valley Nursery, Inc. is a corporation organized under the laws of the State of Arizona, with its principal place of business at 19820 North 7th Street, Suite 260, Phoenix, Arizona 85024.  Moon Valley is the largest specimen tree grower in the country, with retail operations and locations in multiple states, including Texas.

2.     Plaintiff Glen Flora Farm Holdings, LLC is a limited liability company with its sole member residing in Maricopa County, Arizona.

. . . .

1

63167237.1

3. Defendant Zurich American Insurance Company is a corporation organized under the laws of the State of New York with its principal place of business at 1299 Zurich Way, Schaumburg, Illinois 60196. Zurich is authorized to transact business and has transacted business in Arizona.

4. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds the value of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to these claims occurred within this district.

## GENERAL ALLEGATIONS

6. Moon Valley incorporates by reference each and every allegation contained in paragraphs 1 through 5 of this Complaint.

7. This is an action for breach of contract, breach of the duty of good faith and fair dealing, and punitive damages.

## THE POLICY

8. Moon Valley purchased from Zurich a Property Portfolio Protection Policy, No. CPP 0161898-00 (Policy"), with a policy period of November 15, 2016 to February 1, 2018.

9. Under the Policy's provisions, Zurich agreed to "pay for direct physical loss of or damage to **'real property'** and **'personal property'** at a **'premises'** directly caused by a **'covered cause of loss'**." (emphasis in original).

10. Among the **"premises"** covered by the Policy are Moon Valley's: (1) Glen Flora; (2) Spring; and (3) Conroe locations in Texas (the "Disputed Premises").

11. A **"covered cause of loss"** is defined very broadly as "a fortuitous cause or event, not otherwise excluded, which actually occurs during this policy period," and thus includes damage from a named storm.

. . . .

12. For **"personal property,"** the Policy provides for a blanket limit of insurance of $886,899 as follows: "The above Limit of Insurance is the most we will pay for direct physical loss or damage in any one occurrence for all **'personal property'** *at 'premises' for which the Limit of Insurance is shown as Included in Blanket Limit of Insurance*." (emphasis added).

13. By the Policy's clear terms, this Blanket Limit only applies to those **"premises"** for which limits are stated as "Included in Blanket Limit of Insurance."

14. Consistent with the above, the Policy further provides that "[i]f a more specific Limit of Insurance is shown for **'personal property'** at a **'premises'**, that Limit of Insurance *replaces, and is not in addition to*, the Blanket Limit of Insurance," meaning that a policyholder cannot recover at a **"premises"** under both the specific limit and under the Blanket Limit. (emphasis added).

15. The Policy provides for "Inflation Guard" of **"personal property"** at 4% annually.

16. By endorsement dated June 12, 2017, the Blanket Limit for **"personal property"** was increased to $916,899.

17. Although the Policy contains a flood exclusion, the endorsement for "Flood Coverage" unambiguously states that "[t]he Flood exclusion does not apply to loss or damage at a **'premises'** at which a Limit of Insurance is shown on the Declarations for Flood."

18. The Disputed Premises all have a Limit of Insurance shown for Flood, and thus the flood exclusion in no way applies to the Disputed Premises.

19. In the Endorsement for "Named Storm-Direct Damage and Time Element Deductible," the Policy provides that:

> With respect to *all loss or damage caused directly or indirectly* by a **"named storm"**, regardless of whether any other cause or event, including a **"mistake"**, **"malfunction"**, or another weather condition, contributes concurrently or in any sequence to the loss, the following applies:

3

63167237.1

> We will not pay for loss, damage, cost, or expense at any one **"premises"** in any once occurrence until the amount of covered loss, damage, cost, or expense exceeds the Named Storm-Direct Daamge and Time Element Deductible shown on the Declarations for that **"premises"**. *We will then pay for the amount of covered loss*, damage, cost, or expense in excess of the Deductible, up to the applicable Limits of Insurance. (*italicized* emphasis added).

20. "'**Named storm**' means any storm or weather disturbance that is named by the U.S. National Oceanic and Atmospheric Administration, the U.S. National Weather Service, the Central Pacific Hurricane Center, the National Hurricane Center, or any comparable worldwide equivalent."

### CHANGE ENDORSEMENTS FOR THE DISPUTED PREMISES

21. The Policy provides the following limits and deductibles for the Glen Flora location:

   a. Limit of Insurance:
      i. Real Property – $810,300
      ii. Personal Property – $185,000
      iii. Earth Movement (Schedule A) – $996,000
      iv. Flood – $961,000
   b. Deductible:
      i. Earth Movement – $25,000
      ii. Named Storm-Direct Damage and Time Element – $25,000
      iii. Flood – $100,000

22. The Policy provides the following limits and deductibles for the Spring location:

   c. Limit of Insurance:
      i. Real Property – Included in Blanket Limit of Insurance
      ii. Personal Property – Included in Blanket Limit of Insurance
      iii. Earth Movement (Schedule A) – $115,000

4

63167237.1

        iv. Flood (Schedule I) – $115,000

        v. Off-Premises Service Interruption-Direct Damage – Not Covered

    d. Deductible:

        i. Earth Movement – $25,000

        ii. Flood – $25,000

        iii. Named Storm-Direct Damage and Time Element – $25,000

23. The Policy provides the following limits and deductibles for the Conroe location:

    e. Limit of Insurance:

        i. Real Property – Not Covered

        ii. Personal Property – Included in Blanket Limit of Insurance

        iii. Earth Movement (Schedule A) – $30,000

        iv. Flood (Schedule I) – $30,000

        v. Off-Premises Service Interruption-Direct Damage – Not Covered

    f. Deductible:

        i. Earth Movement – $25,000

        ii. Flood – $500,000

        iii. Named Storm-Direct Damage and Time Element – $25,000

**HURRICANE HARVEY & MOON VALLEY'S LOSSES**

24. On August 25, 2017, Hurricane Harvey struck Texas, causing damage to Moon Valley's Disputed Premises as well as other covered locations.

25. Among other things, Hurricane Harvey (a named storm) caused damage to Moon Valley's premises through wind, storm, overflowing rivers, water being let out of a dam, and other means.

26. At all of the Disputed Premises, Moon Valley's damages were caused both by wind and flooding from Hurricane Harvey.

5

63167237.1

27. Among Moon Valley's damages caused by Hurricane Harvey were losses of its **"personal property"** in the form of lost inventory, in addition to some damage to equipment, buildings, and other losses.

28. Moon Valley suffered the following damages to its inventory at the Disputed Premises, in addition to other damages:

      g. Glen Flora – over $800,000

      h. Conroe – over $1,600,000

      i. Spring – over $1,100,000

**ZURICH'S BAD FAITH REFUSAL TO FULLY PAY UNDER THE POLICY**

29. Following its loss from Hurricane Harvey, Moon Valley promptly submitted its claim to Zurich under the Policy.

30. Taking unreasonable and unsupportable coverage positions, Zurich paid Moon Valley $799,110.68 for its losses, even though the security Moon Valley purchased under the Policy required payment of more than double that amount.

31. For example, at the Glen Flora location Zurich arbitrarily divided Moon Valley's loss between flood damage and wind damage, even though all of the losses involved flooding, simply in order to apply a lower $185,000 limit of liability to part of the losses.

32. Zurich then took the opposite approach under the Spring and Conroe locations, allocating all losses under the flood limit of liability, in order to achieve the minimal payout possible.

33. To justify its unreasonable coverage position, Zurich took the position that "Named Storm is [not] a peril for which coverage is provided," even though a named storm easily satisfies the meaning of a covered cause of loss – a "fortuitous cause or event, not otherwise excluded, which actually occurs during this policy period."

34. Zurich also unreasonably relied upon the flood exclusion in order to limit Moon Valley's coverage, even though the Policy unambiguously states that "[t]he Flood exclusion does not apply to loss or damage at a **'premises'** at which a Limit of

6

1  Insurance is shown on the Declarations for Flood," and each of the Disputed Premises
2  showed a Limit of Insurance for Flood.

3      35.     Similarly, Zurich took the position that the "Glen Flora personal property
4  limit is included within the Blanket Limit," even though the Policy unambiguously
5  states that the Blanket Limit only applies to "'**premises'** for which the Limit of
6  Insurance is shown as Included in Blanket Limit of Insurance." Glen Flora is the only
7  **"premises"** that has a separately stated limit of insurance for personal property, and
8  <u>does not</u> state that it is "Included in Blanket Limit of Insurance."

9      36.     Even though Zurich had no basis to dispute, and did not dispute, that the
10 personal property Blanket Limit was actually $916,899, and not $886,899, Zurich did
11 not make any additional payment to Moon Valley for the difference.

**COUNT I**
**(Breach of Contract)**

14     37.     Moon Valley incorporates by reference each and every allegation
15 contained in paragraphs 1 through 36 of this Complaint.

16     38.     The Policy is a valid contract between Moon Valley and Zurich.

17     39.     The Policy requires Zurich to make additional payment on Moon Valley's
18 claim for losses caused by Hurricane Harvey.

19     40.     Zurich has breached the contract by refusing to pay Moon Valley the
20 additional amounts still owing under the Policy.

21     41.     Moon Valley has been damaged by Zurich's breach.

**COUNT II**
**(Breach of Duty of Good Faith and Fair Dealing)**

24     42.     Moon Valley incorporates by reference each and every allegation
25 contained in paragraphs 1 through 41 of this Complaint.

26     43.     Zurich has a duty of good faith and fair dealing under the Policy.

27     44.     Zurich has breached its duty of good faith and fair dealing, including as
28 set forth in paragraphs 29 through 36 above.

7

63167237.1

45. Zurich's conduct coverage position lacked a reasonable basis.

46. Zurich compelled Moon Valley to file this lawsuit to recover the benefits to which it is entitled under the Policy.

47. Zurich's bad faith has caused Moon Valley damages.

## PUNITIVE DAMAGES

48. Moon Valley incorporates by reference each and every allegation contained in paragraphs 1 through 47 of this Complaint.

49. Zurich intended to injure its policyholder and/or consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Moon Valley, as set forth above.

50. Zurich's conduct was oppressive, outrageous, and/or intolerable.

51. Zurich acted intentionally with the express purpose of harming Moon Valley's interests.

WHEREFORE, Moon Valley respectfully requests judgment as follows:

A. An award against Zurich of actual and compensatory damages, in the amount established by the evidence;

B. An award against Zurich for damages caused by its bad faith breach of contract;

C. An award against Zurich of reasonable attorneys' fees, costs and disbursements for this action, as provided under A.R.S. § 12-341.01, A.R.S. § 12-341, common law, and other applicable law;

D. An award against Zurich of punitive damages in the amount established by the evidence, and as warranted by the egregious nature of Zurich's conduct;

E. An award for any and all pre-judgment and post-judgment interest at the rate applicable under the law; and

F. For such other and further relief as this Court deems just or proper.

. . . .

. . . .

# DEMAND FOR JURY TRIAL

Moon Valley hereby demands a trial by jury on all issues so tryable.

DATED this 18th day of April, 2018.

**POLSINELLI PC**

By: *s/ Jonathan G. Brinson*
Jonathan G. Brinson
E. Tanner Warnick
One East Washington Street, Suite 1200
Phoenix, AZ 85004-2568
*Attorneys for Plaintiffs*

9

63167237.1

**CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2018, I electronically transmitted the foregoing document to the U.S. District Court Clerk's Office by using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrant(s).

I further certify that on April 18, 2018, I sent, via hand delivery, a paper courtesy copy of the foregoing document and the Notice of Electronic Filing to the assigned Judge.

*s/ Dawn M. Coppens*

63167237.1